FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 05, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TERRY M. LESHER,<br><br>                        Plaintiff,<br><br>      v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                        Defendant. | No.   2:15-CV-00237-SMJ<br><br>**ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND DENYING PLAINTIFF'S SUMMARY JUDGMENT MOTION** |

      Before the Court, without oral argument, are cross-summary-judgment motions. ECF Nos. 18 & 20. Plaintiff Terry M. Lesher appeals the Administrative Law Judge's (ALJ) denial of benefits. ECF No. 3. Mr. Lesher contends the ALJ improperly (1) rejected the opinion of Mr. Lesher's treating physician; (2) discredited Mr. Lesher's VA disability rating; (3) rejected Mr. Lesher's subjective complaints; and (4) determined Mr. Lesher had the ability to perform other work in the national economy. The Commissioner of Social Security ("Commissioner") asks the Court to affirm the ALJ's decision.

      After reviewing the record and relevant authority, the Court is fully informed. For the reasons set forth below, the Court affirms the ALJ's decision and therefore denies Mr. Lesher's motion and grants the Commissioner's motion.

ORDER **-** 1

## I. STATEMENT OF FACTS[1]

During the relevant period, Mr. Lesher suffered from several impairments including: fibromyalgia, degenerative disc disease, osteoarthritis of the right ankle, right wrist/forearm fracture, carpal tunnel syndrome, and sleep apnea treated with a CPAP. Mr. Lesher saw a number of providers for treatment of his conditions. Tr. 801. Mr. Lesher alleged that as a result of his conditions he was unable to engage in most activities and lived a generally sedentary lifestyle limited to sitting at home, reading, and watching television. Tr. 81–82. However, Mr. Lesher did occasionally drive and grocery shop for himself. Tr. 77–78. Mr. Lesher is a retired veteran with twenty years' service in the United States Airforce. Tr. 74. When he retired in 2007, he was working as a shift supervisor for the kitchen. *Id.*

## II. PROCEDURAL HISTORY

Mr. Lesher filed an application for disability insurance benefits on January 21, 2014, alleging disability beginning on December 31, 2007. Tr. 185–86. Mr. Lesher's application for benefits was disapproved by the Social Security Administration on March 27, 2014, and the agency denied reconsideration on September 9, 2014. Tr. 102–15. Mr. Lesher appealed to the Office of Disability

---

[1] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, and the parties' briefs.

and Adjudication Review and, following a hearing, an Administrative Law Judge (ALJ), issued a decision denying benefits on March 25, 2015. Tr. 11–32. Mr. Lesher subsequently appealed to the Social Security Appeals Council, which denied review. Tr. 1–10. Mr. Lesher filed an appeal in this district on September 30, 2015. ECF No. 3.

### III. <u>DISABILITY DETERMINATION</u>

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The decision-maker uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision-maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not, the disability claim is denied. If the claimant does, the evaluation proceeds to the third step.

Step three compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment does not, the evaluation proceeds to the fourth step.

Step four assesses whether the impairment prevents the claimant from performing work he has performed in the past by examining the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform his previous work, he is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of his age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see also Bowen v. Yuckert*, 482 U.S. 137 (1987). If the claimant can, the disability claim is denied. If the claimant cannot, the disability claim is granted.

The burden of proof shifts during this sequential disability analysis. The claimant has the initial burden of establishing a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The burden then shifts to the Commissioner to show (1) the claimant can perform

other substantial gainful activity, and (2) that a "significant number of jobs exist in the national economy," which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). A claimant is disabled only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

## IV. ALJ FINDINGS

The ALJ concluded at steps one and two that Mr. Lesher had not been gainfully employed since December 31, 2007, and that during the relevant period he had the following severe impairments: fibromyalgia; back and neck pain due to mild degenerative disc disease with mild disc bulging by history; osteoarthritis of right ankle status post remote injury/surgery with repeat surgery in August 2013; right wrist/forearm fracture; carpal tunnel syndrome by history; obesity; and sleep apnea, treated with CPAP. Tr. 16. The ALJ found that post-traumatic stress disorder and depression were not severe impairments during the relevant period. Tr. 20–21. At step three, the ALJ found that none of Mr. Lesher's impairments met or medically equaled the severity of a listed impairment. Tr. 20. At steps four and five, the ALJ found that Mr. Lesher had the residual functional capacity to perform a full range of light work with some additional limitations and that, while

he was unable to perform his past relevant work given these limitations, jobs existed in significant numbers in the national economy that he could have performed. Tr. 21–27.

## V. <u>STANDARD OF REVIEW</u>

The Court must uphold an ALJ's determination that a claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision. *Molina v. Astrue,* 674 F.3d 1104, 1110 (9th Cir. 2012) (citing *Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir.1985)). "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 1110 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). This must be more than a mere scintilla, but may be less than a preponderance. *Id.* at 1110–11 (citation omitted). Even where the evidence supports more than one rational interpretation, the Court must uphold an ALJ's decision if it is supported by inferences reasonably drawn from the record. *Id.*; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

## VI. <u>ANALYSIS</u>

Mr. Lesher argues that the ALJ erred by (1) rejecting the opinion of Mr. Lesher's treating physician; (2) giving reduced weight to Mr. Lesher's Veteran's Administration (VA) disability rating; (3) rejecting Mr. Lesher's subjective

complaints in determining his residual functional capacity; and (4) failing to consult a vocational expert at step five to determine whether his impairments limited the number of jobs available in the national economy given his alleged limitations. A review of the record reveals the ALJ acted properly with respect to each of these claims. Accordingly, there is no reason to upset the ALJ's determination.

**A. The ALJ properly considered the opinion of Mr. Lesher's treating physician.**

Mr. Lesher argues that in determining his residual functional capacity at step four, the ALJ improperly rejected the opinion of Mr. Lesher's examining provider, Dr. Noland. The opinion of an examining physician is generally entitled to greater weight than the opinion of a nonexamining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ cannot reject a treating or examining physician's opinion, even if it is contradicted by another physician, without setting forth specific and legitimate reasons supported by substantial evidence. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Here, the ALJ rejected Dr. Noland's opinion because he found that Dr. Noland's opinion that Mr. Lesher was "certainly disabled by muscle pain" was not supported by objective medical evidence in the record. Tr. 25; *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding an ALJ may reject a doctor's opinion when it is contradicted by that doctor's own clinical notes or other recorded observations);

ORDER - 7

*Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (holding internal inconsistencies within a doctor's report constitute relevant evidence in determining the weight to give a doctor's opinions). The ALJ cited the fact that Mr. Lesher's physical exam could not confirm a diagnosis of fibromyalgia; the exam showed Mr. Lesher's physical symptoms had not worsened despite his subjective statements of worsening; Mr. Lesher's chronic lumbar pain was not strongly suggestive of a neurogenic source; and Mr. Lesher's "brain fog" could be attributed to numerous cognition-active medications he was taking. Tr. 25. Because the ALJ stated specific reasons supported by substantial evidence for rejecting Dr. Noland's opinion, the ALJ committed no legal error.

Although the ALJ rejected Dr. Noland's testimony, he gave significant weight to Dr. Alexander's testimony. Tr. 24–25. Mr. Lesher contends that the ALJ "committed reversible error by discounting the opinion of Mr. Lesher's treating physician and favoring the opinion of a consultative physician." ECF No. 18 at 14. The ALJ explained that Dr. Alexander had the opportunity to examine the entire longitudinal record to arrive at his conclusions, which treating sources and other examiners did not have. Tr. 24. The ALJ also emphasized that Dr. Alexander identified medical evidence consistent with a residual functional capacity to perform a light range of work. *Id.* Specifically, Dr. Alexander cited the fact that Mr. Lesher's treating physician advised him that he could return to light activity

and continue advancing his activities to full. *Id.* A follow up exam noted that Mr. Lesher's condition had not objectively worsened since the date of the fracture. *Id.* Accordingly, there is substantial evidence in the record to support the ALJ's decision to give significant weight to Dr. Alexander's opinion.

**B.     The ALJ provided specific, valid, persuasive reasons for reducing the weight given to Mr. Lesher's VA disability rating.**

Mr. Lesher next objects to the ALJ's treatment of the VA disability rating. VA disability ratings are ordinarily entitled to great weight. *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). However, an ALJ may give less weight to a VA disability rating if he or she gives persuasive, specific, valid reasons for doing so that are supported by the record. *Id.* An ALJ may not merely rely on the "general ground that the VA and SSA disability inquiries are different." *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685 (9th Cir. 2009). Instead, the distinction must be specific to the individual case, such as when the SSA has information that the VA did not. *Id.*

Here, the ALJ gave the VA disability rating of 80% only "some weight." The ALJ provided two reasons in support of his decision. Tr. 26. First, the ALJ noted that the VA decision contained "very little specific medical findings in the rating decisions . . . [regarding] the relevant period under consideration here." *Id.* Second, the ALJ reasoned "[t]he claimant appears to have exaggerated some of his complaints, given his testimony of five surgeries on the right ankle and

ORDER - 9

disability due to post-traumatic stress disorder, none of which are outlined in these VA disability rating decisions." *Id.*

The ALJ provided persuasive, specific, valid reasons for reducing the weight attributed to the VA disability rating. An ALJ need not accept medical evidence that is brief and conclusory in form with little clinical findings to support its conclusions. *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The findings in the VA disability determination rely heavily on medical evidence from Mr. Lesher's term of service, dating as far back as 1991. *See* Tr. 804. While the ratings report also contains findings from QTC examinations that occurred in February and May of 2008, the ALJ's conclusion that the report contains little clinical findings regarding the relevant date, December 31, 2007, is supported by substantial evidence in the record.

Although the point was not clearly articulated, the ALJ also appears to have reduced the weight given to the VA rating because the ALJ possessed evidence that the VA did not have, which undermines the evidence the VA did have. *See Valentine*, 574 F.3d at 696 (upholding ALJ's rejection of VA rating where it was based largely on opinion discredited by ALJ). The ALJ found Mr. Lesher's symptom testimony to be less than credible. Tr. 23–24. The VA rating relied heavily on evidence gathered from the 2008 QTC examination, which in turn relied heavily on Mr. Lesher's own reporting of his symptoms and pain. *See* Tr.

802. Because the VA rating relied on evidence from a less-than-reliable source, the ALJ did not err in reducing the weight given to the opinion. Mr. Lesher argues that the VA is entitled to make its own credibility findings with respect to Mr. Lesher's symptom testimony. ECF No. 18 at 18. While this may be true, the record does not show that the VA was aware of Mr. Lesher's inaccurate symptom reporting. It is therefore impossible to know how, if at all, the VA compensated for potential inaccuracies in rendering its assessment of Mr. Lesher's disability.

The ALJ was justified in reducing the VA's disability rating on the basis that he had evidence that the VA did not, which undermined the evidence the VA did have. Notably, the ALJ did not reject the disability rating in its entirety. The ALJ still took the disability rating into account, but to a lesser extent than he would have had the opinion not contained the above-discussed flaws. Tr. 26. The ALJ therefore did not commit reversible error on this point.

**C.     The ALJ's credibility findings are supported by substantial evidence.**

Mr. Lesher argues that the ALJ failed to provide valid reasons for rejecting his subjective complaints.[2] The Commissioner argues that the ALJ's credibility

---

[2] Mr. Lesher also asserts that the ALJ did not properly consider the lay witness statement of his ex-wife, Rachel Liddell. ECF No. 18 at 14. However, because Mr. Lesher does not present any specific argument in his opening brief that addresses and challenges the ALJ's reasons for rejecting Ms. Liddell's statement, Tr. 24, this Court finds the issue is waived. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

ORDER **-** 11

finding is supported by substantial evidence, and therefore may not be second guessed by this Court.

Where a claimant presents objective medical evidence of impairments that could reasonably produce the symptoms complained of, an ALJ may reject the claimant's testimony about the severity of his symptoms only for "specific, clear and convincing reasons." *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014). An ALJ must make sufficiently specific findings "to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). General findings are insufficient. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). ALJs may consider many factors in weighing a claimant's credibility, including prior inconsistent statements, unexplained failures to seek treatment, and claimant's daily activities, among others. *Tommasetti*, 533 F.3d at 1039. Courts may not second guess an ALJ's findings that are supported by substantial evidence. *Id.*

Here, the ALJ found that Mr. Lesher's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," satisfying the first step in the analysis. Tr. 23. The ALJ then explained that Mr. Lesher's statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. Tr. 23–24. In support of this finding, the ALJ articulated five reasons: (1) Mr. Lesher waited several years between the

onset of his allegedly disabling conditions and the date he finally applied for disability benefits; (2) Mr. Lesher reported high levels of pain during treatment but did not appear to be in acute distress when reporting the pain; (3) Mr. Lesher's reports of a sedentary lifestyle were not supported by the exam results reported in an October 26, 2012; (4) Mr. Lesher misrepresented the number of surgeries he underwent on his ankle; and (5) there was a lack of objective medical evidence to support Mr. Lesher's testimony that he regularly had accidents from his irritable bowel syndrome, used the restroom 20 times per day, and struggled with nausea. *Id.*

First, Mr. Lesher argues that the ALJ erred in discrediting his testimony based on the nearly six-year delay between his alleged disability onset date in 2007 and the date on which he filed his application for disability benefits in 2014. ECF No. 18 at 15. At the hearing, Mr. Lesher's counsel explained that Mr. Lesher was under the mistaken belief that he had to be considered 100% disabled under the VA's rating system to qualify for benefits. Tr. 43. While Mr. Lesher's explanation provides one interpretation of this delay, the ALJ drew a different, but equally supported, inference—that Mr. Lesher's symptoms were not truly disabling as of the alleged disability onset date. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record."). The ALJ did not err in considering the period of delay as a factor in determining the weight to assign to Mr. Lesher's symptom testimony.

Second, Mr. Lesher appears to argue that the ALJ relied on inaccurate medical information regarding Mr. Lesher's subjective pain reporting. ECF No. 18 at 16. During various exams, Mr. Lesher reported pain as high as 10/10, but the physicians noted Mr. Lesher did not appear to be in acute distress while reporting these pain levels. *See, e.g.*, Tr. 351, 386, 460, 465, 479, 521, 526. Mr. Lesher argues that "the treatment records here are inconsistent and are not a good indication of what defines 'acute distress' and whether Mr. Lesher was actually in pain at the time." ECF No. 18 at 16. Mr. Lesher does not cite any legal precedent to suggest the ALJ is not entitled to consider the information provided in the medical record. The ALJ did not err in considering this discrepancy when evaluating the credibility of Mr. Lesher's symptom testimony.

Third, Mr. Lesher asserts that the ALJ erred in concluding his reports of a sedentary lifestyle conflicted with the medical evidence in the October 26, 2012 exam. ECF No. 18 at 16. He contends that the fact that the exam did not indicate fibromyalgia or worsening degenerative disc disease does not necessarily mean that he does not live a sedentary lifestyle. *Id.* This argument is unsuccessful, however, because the interpretation of the evidence in the record is within the

ALJ's discretion. *See Molina,* 674 F.3d at 1111. The October 26, 2012 examination did not reveal any apparent medical condition that would render Mr. Lesher unable to pursue a more active lifestyle. Tr. 480. The ALJ's conclusion that Mr. Lesher's symptom testimony is not in line with the medical evidence is supported by the record.

Fourth, Mr. Lesher argues that the ALJ should not have considered his misrepresentation of the number of surgeries he had undergone on his ankle in considering the reliability of his testimony. ECF No. 18 at 16–17. Mr. Lesher contends that he was not purposefully untruthful and that the number of surgeries has no bearing on whether Mr. Lesher's symptoms were of the severity and intensity he described. *Id.* While the number of surgeries may not affect the severity of Mr. Lesher's symptoms, his misrepresentation of his medical history has a direct bearing on the credibility of his testimony overall. An ALJ is entitled to rely on inconsistencies in evaluating the credibility of a claimant's subjective complaints. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) ("In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony.").

Finally, Mr. Lesher argues that the ALJ incorrectly found that there was no objective medical evidence to support Mr. Lesher's testimony that he used the

ORDER - 15

restroom 20 times per day, regularly experienced accidents from his irritable bowel syndrome, and struggled with nausea. ECF No. 18 at 17. Although the record shows Mr. Lesher was diagnosed with benign prostate hypertrophy, the ALJ correctly noted other evidence in the record that contradicted Mr. Lesher's testimony. Specifically, on August 6, 2009, Mr. Lesher had an appointment with Dr. Noland during which Dr. Noland "urged [Mr. Lesher] to consider urology evaluation" but Mr. Lesher declined. Tr. 291. During this same visit, Dr. Noland explained to Mr. Lesher that his worsening urinary symptoms were linked to his antihistamine use. *Id.* Dr. Noland set a follow up appointment for two months later "or sooner if there are problems." *Id.* Mr. Lesher had appointments with Dr. Noland on August 31, 2009, September 8, 2009, and October 9, 2009. Tr. 279–91. The treatment notes from these visits do not show that Mr. Lesher made any complaints regarding his urinary symptoms. *See id.* The failure to report symptoms to treatment providers is a legitimate consideration in determining the credibility of those complaints. *See Greger v. Barnhart*, 464 F.3d 972 (9th Cir. 2006).

In sum, the ALJ provided numerous justifications for discrediting Mr. Lesher's symptom testimony, which, taken together, constitute specific, clear and convincing reasons supported by substantial evidence in the record. The ALJ therefore did not err in giving no weight to Mr. Lesher's testimony.

**D. The ALJ met the burden of showing that jobs were available in significant numbers in the national economy that Mr. Lesher could perform.**

Mr. Lesher objects to the ALJ's step-five determination that jobs were available in significant number in the national economy that Mr. Lesher could perform. ECF No. 18 at 18. Mr. Lesher specifically asserts that the ALJ committed legal error by failing to call or consult a vocational expert. *See id.* "There are two ways for the Commissioner to meet the burden of showing that there is other work in significant numbers in the national economy that the claimant can perform: (a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Tackett v. Apfel*, 180 F.3d 1094, 1100–01 (9th Cir. 1999). Here, the ALJ did the latter and concluded that Mr. Lesher had the residual functional capacity to perform the full range of light work. Tr. 26–27. The fact that the ALJ did not consult a vocational expert is not grounds for reversal.

Mr. Lesher next appears to argue that the ALJ misapplied the Medical-Vocational Guidelines because "the evidence establishes Mr. Lesher is disabled and cannot perform jobs in the national economy." ECF No. 18 at 18. However, this argument merely rehashes Mr. Lesher's objections to the ALJ's determinations in steps 1–4. For the reasons discussed above, the ALJ properly weighed and evaluated the medical and subjective evidence in the record. The

ORDER - 17

ALJ properly discredited Mr. Lesher's testimony that his symptoms rendered him largely sedentary and unable to perform normal daily functions. The ALJ therefore properly applied the evidence to the Medical Vocational-Guidelines to reach a conclusion that Mr. Lesher could perform a full range of light work. The ALJ's determination that Mr. Lesher's limitations had "little or no effect on the occupational base of unskilled light work" is likewise supported by substantial evidence in the record. *See* Tr. 27.

Finally, Mr. Lesher asserts that "[i]n order to find that the claimant's disability does not continue through the date of the decision, the evidence must show that medical improvement has occurred which is related to the claimant's ability to work, or that an exception applied." ECF No. 19 at 18–19. Mr. Lesher bases his argument on 20 C.F.R. § 404.1594(a). However, the requirements under this regulation are triggered only when a claimant has already been found disabled by the Social Security Administration. Because the ALJ found Mr. Lesher was not disabled at any time during the relevant period, the process set out in 20 C.F.R. § 404.1594 did not apply.

**E.     Conclusion**

For the reasons discussed, the Court finds the record contains substantial evidence from which the ALJ properly concluded, when applying the correct legal standards, that Terry M. Lesher does not qualify for benefits.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

2. The Commissioner's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED**.

3. **JUDGMENT** is to be entered in the Commissioner's favor.

4. The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 5th day of January 2018.

_____
SALVADOR MENDOZA, JR.
United States District Judge